All right, number 182155, Lacko v. United of Omaha Life Insurance Company. Good morning, Mr. Dabofsky. Good morning, Your Honors. May it please the court, counsel. My name is Mark Dabofsky. I represent Shirley Lacko in this proceeding. This court held in Hawkins v. First Union that a desperate, a person should not be punished for their heroic efforts to work by being held to have forfeited their benefits when they finally succumb to their disabling illnesses. That decision was written 15 years ago and could apply to the situation involving Shirley Lacko as well. At the time that Shirley Lacko stopped working for BKD, she complained that she had experienced an exacerbation of her stomach pain, hand pain, had been on new medications including gabapentin, which caused her to become, to dull her thinking. And this wasn't just a matter of allegations. This was supported by objective, corroborative evidence. Laboratory tests, x-ray evidence consistent with the inflammatory arthritis. Now, is it your argument that a determination of long-term disability would be mandated if the auditor tax occupation had been used instead of manager department? Yes. Now, doesn't her position appear to include responsibilities similar to both occupations, in which case United could properly choose one? Absolutely not. The distinctions between the two occupations could not be more dramatic. While, of course, both occupations had some managerial responsibilities and supervisory responsibilities, from a macro perspective, the occupation of auditor or even the occupation of accountant requires a CPA. The manager department occupation does not require a CPA. From a micro perspective, the defendant was very insistent that this was a policy. That's what the defendant has argued to this court. So, if we look at the Dictionary of Occupational Titles definitions for these various positions, the manager department position has a specific vocational preparation, a term used in the Dictionary of Occupational Titles of seven. What that means is it takes approximately two years to learn the job. The auditor position has a specific vocational preparation of eight, requiring at least four years. The job description said that at least seven years of accounting experience was required. The accountant occupations have higher levels of mathematic ability and language ability than the manager of any department. This is like saying a attorney could be a paralegal or an attorney could be a manager. In fact, it's for this very reason that the Social Security Administration found that after Ms. Lacow could not perform the duties of her regular occupation, her past relevant work, that there were no transferable skills. That the skills that she had acquired were not transferable to other skills, even though Social Security Administration found that she was capable of performing a light duty occupation. United of Omaha made the same mistake here. But didn't the Social Security Administration base that in large part on the fact that she met the GRID Rule 202.06, I think it is, which factored in her age, which required them to find her disabled. Your Honor is conflating the Step 4 determination in the Social Security claim and the Step 5 determination. Social Security employs a sequential evaluation process consisting of five steps. First step is, are you working? Two, do you have a severe impairment? Three, do you meet the listings? Four, can you return to your past relevant work? Five, is there any other work that you can perform? Social Security made an explicit finding because of various limitations that were documented in the Disability Determination Explanation form. That Ms. Lacow had manipulative limitations, she had concentration limitations, she had some memory limitations, that she could not perform her past relevant work. The Step 4 finding is made completely irrespective of age. Age only becomes a factor in a Social Security determination at Step 5. But even so, United of Omaha made sort of the same mistake here as far as equating exertional ability to ability to perform your occupation. This is an own occupation disability policy. The standard of disability is, can you perform the duties of your regular occupation? This is not, can you perform a light occupation? This is not, can you perform a sedentary exertional occupation? This is own occupation. What is your best objective evidence in the record that your client was not able to perform her occupation? The findings of Dr. Herzen, which were confirmed by x-ray evidence, and blood tests. But was there recent x-ray evidence and blood tests to support that? I know there were some from back from 2013, which hadn't shown a substantial change. Dr. Herzen's testing was done almost immediately after Ms. Lacow stopped working in September 2015. And what is it that you're claiming is in the record to support Dr. Herzen's position? In terms of objective evidence. I know Dr. Herzen examined her. She considered your client's statements to her. And she gave an opinion that she couldn't work. But my question is, what is the objective medical evidence that supports Dr. Herzen's position? It's there in his report. You can find it in the record. What is it, please? 1453. I'm sorry. But what is it? Not the record site, please. What is it? X-rays, blood tests. The x-rays demonstrated that there were changes observed in Ms. Lacow's hands that were consistent with an active, erosive, rheumatoid arthritis type process. She had an elevated anti-nuclear antibody test, which is consistent with rheumatoid arthritis. She had an elevated sedimentation rate, which is consistent with rheumatoid arthritis. She had an elevated C-reactive protein finding, which was consistent with rheumatoid arthritis. There's also, from an objective evidence standpoint, Social Security conducted a psychological evaluation, which effectively corroborated that Ms. Lacow had some difficulty with memory and concentration. But didn't the Social Security Administration find that her mental capacity was not a disability for her, or not a basis for her not to work? The Social Security Administration did not find that that was the basis for their determination. But Social Security did find that limitations in mentation were factors that supported the conclusion that she could not perform her past relevant work. Where is that in the Social Security record? I thought they found exactly the opposite. No, if you examine the disability determination explanation, it's in the record at 290 to 304. It's also in the record in several other places, but you can find it there. If you look at the actual document and look at point by point in that document, the document specifies the specific findings that led Social Security to conclude that Ms. Lacow could not perform her past relevant work. In addition to the x-ray evidence and the blood tests, you have breathing tests, you have a cardiac catheterization, which in itself was not severe, but it did diagnose some degree of pulmonary hypertension. There are findings through the record of dyspnea, shortness of breath, on exertion. You have Dr. Campanella's neurological evaluation, which revealed a positive Romberg test, which was consistent with Ms. Lacow's statement that she had difficulty balancing. Romberg test is the gold standard neurological test to show balance impairment. You have the physical therapy records. The physical therapy records, they did an initial analysis in 2016, and then the records go through 10 treatments, and despite 10 physical therapy visits, Ms. Lacow could not sit for more than 30 minutes. Her job required at least four hours of sitting. She had limitations in her ability to use her hands, which was an essential job requirement. She worked on a computer all day. Those other specialists did not opine that she was disabled and couldn't perform her work, did she? I know there were two of her doctors, but there were six others who did not give that opinion. They weren't asked to. They were asked to treat her, and their findings were consistent with her symptom compliance. The best evidence that ties it all up is Dr. Hagen's narrative report that she wrote to the insurance company, where she went condition by condition and explained, put the whole picture together, and you've got an individual who's completely disabled. And that's what Social Security did as well. What United of Omaha did, on the other hand, was they picked off each condition separately and failed to consider the to find independent doctors. And they found two separate independent doctors through this independent third party. Those doctors performed their own review of the records, but they also spoke to each other. Why isn't that considering all of the factors in the record? They didn't speak to Ms. Lacow. They didn't examine Ms. Lacow. But the law doesn't require that. But the question is, why wouldn't it be sufficient that they spoke as experts, and having reviewed all of the documentation that they spoke to each other about the various ailments that she was suffering? Because the record shows that while they listed a number of records that they had reviewed, there's no comment about any of those records. There's no discussion of the physical therapy records. There's no discussion of Dr. Fritz's finding for Social Security. But they summarized in their report their findings. What else are you suggesting they should have done? They should have looked at Ms. Lacow as a whole person. They should have conducted a fair, unbiased assessment. And that would have led them to the exact same conclusion that Social Security would. What's your evidence that... I don't think you're disputing that a third party identified these doctors. What's your evidence that they're biased? You may disagree with their conclusion or say that they didn't look at enough, but to say they should have come up with an unbiased opinion. What's your evidence that's in the record that these doctors are biased? First of all, we did, when we moved to seek discovery, show evidence that Dr. Marks had been frequently retained, which is a potential sign of bias. But the bottom line is, in addition to not looking at all of the evidence and the combination of all of the impairments, they answered the wrong question. They never answered the question of whether Ms. Lacow could perform her regular occupation. They answered the question of whether she could work. But that's not the policy requirement. Dr. Marks, in particular, gave a whole range of functional abilities. He made it up. His opinion is completely inconsistent with the physical therapy reports that document specific ability to sit, stand, transfer from a chair to standing up, which Ms. Lacow could not do after 10 physical therapy sessions. This court has ruled consistently, going back to the National City case, Majeski v. MetLife, Holmstrom v. MetLife, that when the consultant fails to review and comment on all of the relevant evidence and consider all of the relevant evidence, it's arbitrary and capricious. And I will reserve the rest of my time. Good morning, Ms. Kirsten. Good morning. Sorry. Good morning, Your Honors. Edna Kirsten for the defendant, Eppley, United of Omaha. Good morning, counsel. Do you need some water? It's unfortunately deeper than that. I've been battling a cold for several weeks now. I apologize. I will try to speak up, Your Honor. I think my voice still carries decently. It carries perfectly. You know, let's start right out with Ray Bourne because we held in Ray Bourne that a plan administrator must address the Social Security disability finding and provide a reasonable explanation for discounting it, especially when the administrator operates under a structural conflict of interest. Why isn't a remand necessary for United to provide such an explanation here? I think that based on the administrative record, the Social Security determination does not contradict my client's determination. While granted benefits were awarded at the end of the day, the evidence that the Social Security was restrictive and the evidence my... I apologize. My client had... No, no, no. Pick it up and don't worry. We're not going to punish you for... There's a big record here. ...for doing what I do every day, drop everything. The medical examination, for example, that was performed as part of the assessment of the Social Security found Ms. Leko able to perform light duty occupation. Both of our physicians, and I mean ours in terms of the determination here. They're certainly independent physicians. They're not affiliated with United of Omaha. Both of those physicians found her restricted to sedentary occupation. As such, I take exception to Mr. Dubofsky's statement that they made it up. They are actually finding Ms. Leko to be more restricted than Social Security found her to be. In addition to that, Dr. Fritz, who performed an assessment, found her able to work full time on a regular level, at a regular pace, follow instructions, and be not be impaired as a result of a mental disorder or cognitively. Did United play any role here in Ms. Leko applying for Social Security benefits like happened in the Rayburn case? They did not at all, Your Honor. Did they encourage her to do it? I didn't see anything in the record, but I want to make sure I didn't miss something. Did they encourage her at any point to do so? Not that I know of, since the benefits were denied from the get-go. And actually, at the point where the benefits were denied, United was not aware that Social Security was ongoing and eventually was awarded. The Social Security file was not provided until the appeal level. So the determination here was made totally independently. There was no unlike in the Rayburn case, where the scenario is very different. It was in any occupation determination. Benefits had been paid for a while, and there was an encouragement to apply for Social Security, and assistance given. As such, I think the facts in Rayburn are clearly distinguishable from our situation here. Well, here's what bothers me. In denying long-term disability benefits, United acknowledged the Social Security decision in the most cursory manner, by stating, quote, we do acknowledge that Ms. Lacow is currently receiving Social Security disability benefits. However, this does not affect our determination regarding her claim. Eligibility requirements of Social Security disability may differ from the eligibility requirements under this policy. End quote. That discussion is even weaker than the analysis we found insufficient in Rayburn. United didn't even state that the eligibility requirements were materially different, and that such different mandate a different conclusion. Instead, it stated only that the requirements, quote, may differ. End quote. And that is no analysis at all. I could see, Your Honor, that there would be of more concern if the Social Security disability determination was actually contrary to my client's determination, but in this case, it is not. Granted, there's an award at the end of the day. However, it is my understanding of the claim file and the materials that were submitted that the award is largely based on the grid rules. It is an award which was mandated as a result of Ms. Lacow's age, and the medical evidence that was actually before the Social Security administration was not such as to contradict my client's medical evidence, meaning we can rely on Dr. Fritz's assessment, which, as a matter of fact, is cited in my client's letter. If you look at AR 150, at the end of the eighth paragraph, my client specifically talks about the Social Security review, talks about that Ms. Lacow was seen by Dr. Fritz for a mental residual functional capacity assessment, and that the evaluation found no evidence of memory impairment or cognitive impairment, evidencing that my client took the time to review the Social Security file and looked at the evidence and finding no reason to distinguish the evidence itself from the determination that was made in this case, given the fact that, in our case, Dr. Marks and Dr. Kodrad, who conferred with each other, found that Ms. Lacow was restricted to sedentary occupation. And what you just quoted addresses the mental capacity issue? It does. It does, Your Honor. But there's nothing that addresses the physical capacity issue in the letter that went to Ms. Lacow. That is correct. The letter addresses Dr. Marks's findings and Dr. Kodrad's findings, which are more restrictive than the Social Security's findings of light duty capacity. So the letter does not specifically mention the security findings as they were linear and less restrictive than the medical evidence that United of Oma had gathered. And giving Ms. Lacow the benefit of the doubt, we used the more restrictive sedentary restriction evidence that had been gathered by my client, rather than Dr. I believe her name is Madalas' assessment that there was light duty functional capacity. I do want to address the occupational argument which was initially made. This is not an own occupation policy, it's a regular occupation policy. It follows definitions which define regular occupation by reference to the dictionary of occupational titles and by reference to looking at the occupation, not how it is performed for a specific employer, but how it is performed in the national economy. Following Kennedy and the plan document rule, my client did exactly that. It followed the language of the plan documents. It applied the regular occupation definition just as it should have. And it would be our position that Ms. Lacow, in this case, wants to sidestep the plan document rule and wants to insert criteria that the plan documents do not require us to consider. I would like to go back a bit. Even if the ultimate determination of disability by social security was based in part on Ms. Lacow's age, which is not relevant here, didn't the social security determination include a finding that she could not perform her past relevant work? And isn't that analogous to the disability determination under the policy? Not necessarily, Your Honor. I don't believe that the Social Security Administration had the same evidence that my client had in assessing the occupation that Ms. Lacow was performing. What do you think they didn't have? Based on the file that was submitted to my client, there was no job description in there. There was no FMLA information, such as available to my client, and there was certainly no independent vocational assessment available. But what Social Security seems to have believed on is Ms. Lacow's word and Ms. Lacow's description. And as a matter of fact, the Social Security— Boy, that's a new one. At least there's nothing— That would be very unusual. There was nothing else in the file that I could base any other statement on. Maybe there was an assessment made. It certainly wasn't documented. And the job description is certainly not contained in it, and the FMLA information is also not contained on it. As a matter of fact, it does not appear that Ms. Lacow conveyed that based on her job description, her job was named Senior Manager. It was not called Auditor. It was not Accountant. It was Senior Manager, which is what was available to my client. And it's a supervisory position, which is very clear based on the job description and based on the FMLA information, which was submitted by her employer. It's also very clear that's a sedentary occupation. And if I may quote Mr. Dabowski's oral argument just a few seconds ago, he stated, she works on a computer all day. That is a sedentary occupation, and it fits our argument. That's exactly what my client assessed. A supervisory, sedentary occupation. And if we look at the accountant job description, the dictionary of occupational title for accountant, that's a sedentary occupation as well. As such, we believe that our assessment in this case is reasonable. It's reasonable based on the evidence, which is all that this court is tasked to find. The court is not tasked with agreement. The court is tasked with finding whether my client's decision based on the evidence in the file was reasonable. Is it substantiated? And it is, Your Honor. It is substantiated. There's evidence here that supports that her position was a supervisory position, that she was working on the computer all day, that she was in management, senior management as a matter of fact, and that she had other people under her who she guided, who she supervised, and for whom she provided principles and rules to follow. She supervised, she implemented plans, but she was not the one at a lower level who was performing the grunt work. That's not at all what her job description supports. And I believe that Ms. Lackow, by pointing to tax auditor, is trying to change the nature of her occupation to a more strenuous occupation, which she did simply not have. And that combined with the fact that we are to look at the economy as a whole, at the national economy using occupational titles rather than the specific job duties based on the plan document rule, I believe my client's decision relative to the vocational aspect of this claim determination is inherently reasonable. And I would submit that with regard to the medical evidence, that is the same. While Ms. Lackow accused my client of cherry picking, if I look at the medical evidence, there's a whole cherry tree in here. There are not just a few cherries that we picked. There's a lot of evidence that supports my client's determination. And while Mr. Dabowski set out several pieces of evidence for this court to consider, I submit that those pieces of evidence support that she possibly had medical conditions. What they do not support is to what degree those medical conditions impaired her from performing her sedentary occupation. And that is exactly what this court should be considering. That is what my client had to consider, whether the objective evidence prevented my client objectively from performing the material duties of her sedentary occupation. Your client used a third party to find two doctors to review Ms. Lackow's file here and to give opinions. Is there any evidence that those are doctors who your client repeatedly uses? Not in the file, Your Honor. Do you know? Are they doctors who your client repeatedly uses? I have never seen Dr. Potter before. That I can honestly say. Dr. Marks is possibly somebody who is rendering opinions here or there. My understanding is that there was something that was raised by Ms. Lackow during the discovery briefing. However, Judge Alonzo did not consider it material enough to grant discovery in this case, given the fact that just because somebody renders opinions on a possibly infrequent basis, and just because every so often a court may not disagree with those opinions, that does not necessarily mean that they're biased. And especially in this case, I think any possibility of bias with regard to Dr. Marks is possibly outweighed by the fact that Dr. Podrick also reviewed the records. Plus there's Dr. Noren, who at the first level reached the same conclusion. And as I said before, and I don't want to repeat myself, but even Social Security found her to have light duty functional capacity, while Dr. Marks and Dr. Podrick found her to have sedentary level restrictions. I believe my time is almost up, and I don't want to go over. I thank you very much for your time. Thank you. Mr. Glavsky. The policy wasn't a regular occupation policy. It was your regular occupation policy. And contrary to what counsel represented to the court, they did have the job description in the file. It's at pages 959 to 961. And in the vocational report that Susan Gotti prepared, she begins by saying she had job description, senior manager, BKD. That's 00915. So the defendant absolutely knew what Ms. Lacow's occupation was, and the job description explicitly says you have to have a CPA. You don't need to have a CPA to be a manager. Also, with respect to the pages that the defendant cited with respect to Dr. Podrick saying that he reviewed the Social Security report, I don't know what report he was reviewing when he said that there was no evidence of impairment. First of all, as the court identified, Dr. Podrick did not make any comment about Dr. Madala's findings of limitations with respect to using her hands and arms. But the file does say, with respect to Dr. Fritz, I've got it here. This is on page 299. Does the individual have understanding and memory limitations? Answer, yes. The ability to understand and remember detailed instructions, moderately limited. Does the individual have sustained concentration and persistence limitations? Yes. The ability to carry out detailed instructions, moderately limited. The ability to respond appropriately to changes in the work setting, moderately limited. While none of these findings are themselves disabling, they're devastating to somebody who has to work as an accountant and as an auditor. And for that reason, United of Omaha just completely failed to address the question that the policy said it needed to address. Could she perform her regular occupation? They're not free to choose any occupation. They're required to choose her occupation. They failed to do so. In this case, this court must reverse the decision below. Thank you both very much. So nicely argued. Thank you very much, both of you. And the court's going to take a five minute break. So, go wild. Thank you.